Corwin, C. J.
This is a bill for the specific execution of a real •contract. The material facts are as follows :
On the 15th of September, 1824, by articles of agreement of that «date, executed by Walter Dun, of the one part, and James Reed *166 and Samuel Reed, of the other part, Dun sold to the Reeds the premises in controversy, for $558, payable one-third on December 25, 1824, and the-residue in two equal annual installments thereafter.
The land, at the time of this sale, was partly improved and partly unimproved, partly prairie and partly woodland. The buildings, consisted of some log cabins, ashery buildings, and a log stable.
Prior to the sale, the land had been occupied for some years by squatters, and, at the time of the sale, the Reeds were in possession as squatters. They continued in possession *after the sale (though the agreement contained no clause giving them the right of possession) for a little over four years. James Reed left it in the spring of 1829 ; Samuel Reed left it before that time. Neither of them ever afterward personally occupied it, or gave any personal attention to it. It was sometimes temporarily occupied by persons claiming under them as renters, but the testimony strongly tends to prove that they abandoned both the land and contract, or, in the language of one of the witnesses, that they were “ a-going to let the place slide; that they could not pay for it.”
At the July term, 1829, of the United States Circuit Court, no part of the purchase money having been paid, Dun recovered a judgment against the Reeds, on the articles of agreement, for the amount then due, to wit, $709.48, with costs. Upon this judgment an execution was issued in 1830', which was returned, “ no goods- and chattels, lands-or tenements, found whereon to levy.”
No other execution was issued on the judgment; it became dormant and has never been revived, and the respondents are willing that an entry of satisfaction may be made, or that it may be de-' elarod annulled.
On December 28, 1835, the Reeds made a written assignment to the complainant, in these words:
“ Know all men by these presents, that we, Sam’) Reed, of Union county, Ohio, and James Reed, of Delaware county, Ohio, of the first part, do hereby, for and in consideration of the sum of one-hundred dollars, the receipt whereof is hereby acknowledged, assign and convey all our right and title, interest and claim, to a certain tract of land lying and being in the county of Union, Ohio, to Reuben P. Mann, of the county of Union, of the second part, and described as follows (viz): the whole of survey No. 12,238, patented to Walter Dun, containing 188 acres, and the whole *167 of survey No. 8153, containing 94 acres, it being the whole of the land that we, of the first part, purchased of Walter Dun, in the year 1824 or 1825, for the consideration which the said Walter *Dun has since obtained judgment for in the United States District Court of Ohio.” (Signed and sealed by the assignees.)
Mann never took personal possession of the premises, but in the • fall of 1836 he verbally sold the land to his brother-in-law, A. S. Alden, who took possession, and made some small improvements; but in a short time he and Mann rescinded their contract, and in the spring of 1839 he left the place, putting Jesse Lawton upon it. In the spring of 1841 Lawton left, and one Hardin went into possession.
On September 15, 1824, Walter Dun was a resident of Ross county, Ohio, as the articles of agreement between him and the Reeds show. He subsequently removed to Fayette county, Kentucky, and died there in 1838, leaving'five children, to wit.: Mary A. Tompkins, John G-. Dun, James Dun, Walter A. Dun, and R. G-eorge Dun, the two latter being minors. By his will he appointed John G-. and James Dun his executors. In the winter of 1838 James Dun removed to Ohio, and has ever since resided either in Chillicothe or in Madison county. Ever since 1843 John G. Dun has been a resident of Ohio, and the greater part of that time of Madison county.
There is no evidence that Walter Dun, in his lifetime, or his executors, or heirs, after his death, had any knowledge of the occupancy of said premises by said Reeds, or any person claiming, mediately or immediately, from them, until, some time in 1839 or 1840, the heirs learned that Mann or Alden was claiming the property. Without knowing the fact to be so, but supposing that they claimed under the Reed contract (although neither the heirs nor their ancestor had received any notice of the assignment to Mann), the heirs immediately caused a notice to be served on said Mann and .Alden, that they, the .heirs, considered said contract abandoned and rescinded, and demanding possession of the premises. No attention being paid to this notice by Mann or Alden, nor any payment, either in whole or in part, of the purchase money being tendered or offered, or any expression of a readiness or willingness to pay the same being made, the heirs, on ^November 3, 1841, brought an ejectment, service of the declaration in which was acknowledged by Mann and Alden, April 26, 1842.
*168 September 1,1842, Mann caused himself to be made defendant, and entered into the consent rule.
November 8,1842, judgment was rendered in favor of the plaintiffs in ejectment; notice of appeal given by Mann, and, on his motion, execution stayed for sixty days.
November 11, 1842, Mann made an application for the benefit. of the occupying-claimant law, and the same was continued for hearing until the next term, and execution stayed until that term. This application was continued at the April and July terms, 1843. At the October term, 1843, it was overruled.
March 11, 1844, a writ of habere facias possessionem, was issued, which was subsequently stayed by injunction, but before the injunction was allowed, the Duns had peaceably regained the possession.
The first bill exhibited by the complainant was filed January 11, 1843. It avers the execution of the Reed contract, its assignment to complainant; that complainant, in consideration of the assignment, promised the Reeds to pay off the judgment that had been recovered in the circuit court; that Dun is dead, leaving the heirs hereinbefore mentioned, all of whom are prayed to be made defendants, and states that the residence of John Gr. Dun, one of said heirs, is in Madison county, Ohio, and the others reside in Kentucky ; avers that no steps have been taken by.Dun, his heirs, or legal representatives, to rescind said Reed contract, and that complainant has improved the land in a lasting and valuable manner, and at groat expense, but states the prosecution of the action of ejectment, and the recovery therein. It then avers “ that complainant has always been ready, able, and willing to execute said bond, or article of agreement, with said Dun in his lifetime, or his heirs since his death, upon receiving a deed therefor, as he is or would be entitled thereto ; but they have been wholly neglectful in attending to the same.. But it is nowhere averred in the bill that Dun or his *heirs had ever received notice of the assignment to complainant, or that any deed had ever been demanded, or any offer to pay ever made, or that payment had been waived; nor is any offer to pay made by the bill, nor was any money tendered, or brought into court. And the only excuse made for the failure to pay is that above stated.
The prayer of the bill is for a specific execution.
No process was issued, or publication made, or step taken to *169 effect the appearance of the defendants, or either of them, to this bill.
March 14, 1844, a supplemental and amended bill was filed, cor-a’ecting an error in date in the original bill, and stating the issuing of the writ of possession, and praying an injunction to restrain its execution. An injunction was allowed by an associate judge of the •court of common pleas. A writ of subpena was issued, and served upon the sheriff, or, rather, service acknowledged by him, he being made a party to the bill; but no subpena was sent to the counties where the heirs of Dun resided, nor publication made, until September 24, 1844, a subpena was sent to Madison county, and returned, served upon John G-. Dun, and not found as to the others.
July 24, 1847, a second amended bill was filed, and being afterward demurred to, it was amended. As amended, it repeats the •charges previously made, and offers payment upon the receipt of a •deed; but no money was tendered or brought into court. The following additional excuses for the delay of payment are alleged, to wit: “ That said Walter Dun, in his lifetime, frequently represented to said Reed that he would not take back said land and discharge .said judgment; that he looked to the judgment and collection thereof for his pay, and not to a recovery of the land for satisfaction of his claim; that said Reed'might go on to improve the land as his own, subject only to the payment of the judgment; and whenever the judgment should be paid, the land should be conveyed to Reed, his heirs, and assigns; *that upon those facts being communicated to complainant, complainant took said assignment from said Reeds, as aforesaid, and accordingly complainant was ready, anxious, and willing to pay said Dun the amount of said judgment, and take a conveyance of said land; but complainant was informed that said Dun was absent out of the county of Union, and residing at some place unknown to your orator; but your orator has been since informed that he resided part of the time in Kentucky, and part of the time in Ross county, Ohio; that, after assignment to complainant, Dun died; that complainant did not learn, until after" filing his original bill, who were his executors, nor until about the time of filing this supplemental bill and amendment; and, therefore, was unable to make tender of the amount due on said judgment to said executors, though complainant was ready, anxious, and willing to do so, and to pay the same.” This bill is not sworn to.
*170 The defendants are required to answer under oath, and a specific-execution is prayed for, and for general relief.
The heirs of Hun answer, admitting the. sale by their ancestor to the Reeds, the recovery of the judgment in the circuit court, and state the issuing of the execution thereon, and the return of no goods or chattels, lands or tenements; have no knowledge of the-purchase by Mann from the Reeds, and the assignment of the latter to the former, and require full proof; aver that said Reeds and Mann were bound to know that they could pay, if they had desired to do so, the amount of said judgment to the attorney of record of said Hun; do not admit, or believe, that complainant was ignorant of the residence of "Walter Run, whose place of residence was well, known in Union county, in which he was a large landholder. If he was so ignorant, the least diligence would have enabled him to ascertain it. Ho not admit, or believe, that complainant was ignorant of the residence of John G-. and James Hun, the executors of Walter Hun ; state when said John G-. and James removed to Ohio, and where they had resided; show that John G-. had lived for *years in the county of Madison, which adjoins Union county, and James, part of the time in Madison county and part of the time in Chillicothe, and aver that if complainant was ignorant of their place of residence, he could easily have learned it; admit that neither Reeds nor complainant have ever paid any part of the purchase money of said land; know nothing of the alleged representations of Walter Hun, or that they were communicated to said Mann, and can not admit that they were made or communicated ; admit, however, that when the land was sold to Hun, and when he recovered judgment in the circuit court, he did not sell, or obtain judgment, with a view to taking back the land ; but claim that, after finding, by the return on said execution, that nothing could be obtained from said Reeds, and after the lapse of years from the date of said judgment, without any payment being made or tendered, they had the right to rescind the contract; do not admit, but, on the contrary, expressly deny the allegation in the bill, that they have taken ho.steps to rescind the contract; state that, before bringing said ejectment, finding, that said Mann, or Alden, were exercising acts of ownership over said land, they took the advice of counsel and were advised that they had a right to rescind and might recover in ejectment; but that it might be prudent, before bringing such action, to serve a notice on said *171 Mann and Alden, stating that the contract was rescinded and demanding possession; that such notices were accordingly prepared and served before the commencement of said suit; that it may be-the attorney, who prepared the notice, had not, at the time he prepared it, a copy of the contract before him, and for that reason, the notice may not have particularly specified the contract, but may, instead of doing so, have informed said Mann and Alden that the heirs of said Walter Dun considered any contract ever made-by him for the sale of said lands as abandoned and rescinded ; are unable to state what improvements were made by complainant, but say that, according to the best and utmost of their knowledge, information, remembrance, and belief, the use and occupation of the said *tract of land, from the time of the sale to Reeds to the time respondents regained possession, were of more value than all the improvements made thereon during the same period. That period was about eighteen years; whereas, as respondents are informed and verily believe, the same amount of improvement that was made during that period, could have been obtained by letting-the premises on a five years’ improvement lease ; and they utterly deny that they rescinded the contract for the purpose of obtaining, without compensation, any improvements or labor bestowed on said land, as is falsely intimated in the bill; admit the bringing of the ejectment, the recovery of judgment therein, and the issuing of the writ of possession, and aver that these acts of themselves, would have been a sufficient rescission of the contract; do not admit, that complainant has always been ready, able, and willing to pay, as is alleged in the bill; whether he has at all tim os been able to do so, they can not tell; but that he has, at all times, been ready and willing to do so, they wholly disbelieve ; deny all fraud, and insist upon lapse of time and the statute of limitations.
To the’ answers a general replication was filed, and testimony-taken on both sides. No evidence was adduced that Walter Dun ever made the alleged representations stated in the bill, or that any such supposed representations were communicated to the complainant ; or that Dun, or his heirs, encouraged the making of the-improvements or waived the delay of payment; or that the complainant was ignorant of the residence of Dun, his heirs, or executors ; or that any deed had ever been demanded, or offer of payment made, or willingness to pay expressed, before the filing of the bill. As to the improvements, the testimony showed that *172 they were of comparatively small value; that the buildings on the place, when the defendants regained possession, were substantially the same that were on it when their ancestor sold to the Roods, and consisted of two old log cabins, a small log stable, and a corn-■crib ; that they wore never of any great value, and when the possession was regained as aforesaid, *wcro worth about twenty •dollars. That the fields had been somewhat enlarged, a ditch dug, and some pasture-ground fenced in, by the Reeds and those claiming under them, including the complainant and those claiming under him. but that, on the other hand, the tillable land had been .greatly worn out and very considerable waste had been committed. It was clear that the value of the use and occupation of the ■premises, irrespective of the waste, exceeded the value of the improvements.
The service of the notice of rescission, in 1839 or 1840, was proved ■by the deposition of a witness.
The bill was dismissed by the court of common pleas and an appeal taken by the complainant. At June term, 1851, of the ■Supreme Court, he brought into court and tendered the amount of the judgment recovered in the circuit court, with interest. This was the first tender of the purchase money, or any part of it, that had ever been made. It was made over twenty-four years after the whole purchase money had become due; twenty-two years after the recovery of the judgment in the circuit court; between fifteen and sixteen years after the assignment of the contract to the complainant and his promise to the Reeds to discharge the judgment; about eleven years after the Duns gave the notice of rescission of the contract; almost ten years after the bringing of -the ejectment; nearly nine years after the recovery therein ; between eight and nine years after the filing of the bill, and three years after its dismissal from the common pleas.
It would be difficult to collate from the papers a full statement •of the facts of this cause, without an indication of the conclusion to which every mind must arrive as to the law of the case. “We •are unanimous in the opinion that the complainant is not in a situation to ask a specific performance of the contract which ho sots ■up. That either he, or those under whom he holds, ought, at some -time since the date of the contract, to have manifested some intention to pay the purchase money. That after the lapse, of so many years, after ^notice was given to complainant of the re *173 scission of the contract by defendants, and their recovery of the-premises in ejectment without either performance or offer to perform the contract by complainant, he is without a jdace in a court of equity.
Upon a careful examination of the testimony, we are satisfied that the use and profits of the promises whilst they have been in possession of complainant, are, at the very least, equal to the value of any improvements thereon ; and, there being no other ground of relief alleged, the bill is dismissed, with costs.
Thurman, J., took no part in the hearing or decision of this-cause, being a party in the same.